IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CARL EMANUEL SUNDBERG,

                Petitioner,

    v.

JEFF PREMO,

                Respondent.

Case No. 6:15-cv-01564-MA

**OPINION AND ORDER**

MARSH, Judge.

Petitioner is currently under the post-prison supervision of Linn County Parole and Probation. He brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Petitioner's Habeas Corpus Petition (ECF No. 1) is DENIED, and this case is DISMISSED.

## BACKGROUND

In September 2010, a Lane County grand jury charged Petitioner with one count of first-degree sexual abuse and one count of first-degree unlawful sexual penetration. Resp't Ex. (ECF No. 22) 102. In November 2010, Petitioner pleaded guilty to a lesser offense of attempted first-degree unlawful sexual penetration, pursuant to a plea agreement in which the State agreed to drop the other charges, and to recommend a downward departure sentence of 75-months imprisonment (minus good time), ten years post-prison supervision, and life-long sex offender registration. Resp't Ex. 103. Petitioner signed a plea petition indicating he understood the rights

he was waiving by pleading guilty, that the plea was entered "freely and voluntarily" with full understanding of what he was "giving up by this plea," and that he was "satisfied with the representation" of counsel as well as "any investigation which has been conducted on my behalf." Resp't Ex. 103.

The trial court sentenced Petitioner in accordance with the plea agreement. Petitioner did not directly appeal his conviction, but subsequently sought post-conviction relief (PCR) on the basis that trial counsel was ineffective. Resp't Ex. 106. After conducting a hearing (Resp't Ex. 140), the PCR court denied relief (Resp't Ex. 141), the Oregon Court of Appeals affirmed without opinion (Resp't Ex. 146), and the Oregon Supreme Court denied review (Resp't Ex. 149).

Petitioner comes before this Court, claiming he is entitled to habeas relief on the basis of: (1) a 14th Amendment violation; (2) a 5th Amendment violation; (3) a 6th Amendment ineffective assistance of trial counsel claim; and, (4) a 6th Amendment ineffective assistance of appellate counsel claim. Pet. (ECF No. 1) at 6-7.

Respondent contends Petitioner's first two grounds for relief are procedurally defaulted because he failed to raise them to the appropriate state courts. Resp't Resp. (ECF No. 20) at 2. With regard to Petitioner's Sixth Amendment claims, Respondent urges this Court to defer to the PCR court's determination that Petitioner's trial counsel was adequate. *Id.*

## DISCUSSION

### I. Procedural Default

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(d)(1). A state prisoner satisfies the exhaustion requirement by

"fairly presenting" his claim to the appropriate state courts at all appropriate stages afforded under state law. *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Carrillo-Carrillo v. Coursey*, 823 F. 3d 1217, 1220 (9th Cir. 2016); *Casey v. Moore*, 386 F. 3d 896, 915-16 (9th Cir. 2004). If the petitioner procedurally defaults his available state remedies, habeas relief is precluded absent a showing of cause and prejudice, or that the failure to consider the defaulted claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

This Court concurs with Respondent's assertion (Resp't Resp. at 2) that Petitioner procedurally defaulted all grounds for relief save two instances of ineffective assistance of counsel, because he did not fairly present them on appeal from the denial of post-conviction relief (Resp't Ex's 106, 142, 143, 144), and he can no longer do so. *See* Or. Rev. Stat. § 138.550(3) (requiring all PCR claims to be raised in first PCR proceeding). Further, this Court finds Petitioner has made no showing of cause and prejudice to excuse this procedural default, or that a miscarriage of justice will ensue if these claims are not addressed. *See Coleman*, 501 U.S. at 750; *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (holding that Petitioner bears the burden of proving he is entitled to habeas relief). Accordingly, habeas relief is precluded as to those claims.

## II. Ineffective Assistance of Counsel

Both parties agree that Petitioner has exhausted, and is therefore entitled to review by this Court, of his two claims of ineffective assistance of counsel. Petitioner claims counsel failed to adequately explain the terms of the plea agreement to him, and failed to investigate potentially exculpatory evidence. Pet'r's Br. in Supp. at 5-6, Resp't Resp. at 10.

It is clearly established federal law that a claim of ineffective assistance of counsel requires a habeas Petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1987). Failure to satisfy either prong of this test obviates the need to consider the other. *Id.* at 687.

This Court's inquiry under *Stickland* is highly deferential. The Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012). The issue is not whether this Court believes the state court's determination under *Stickland* is incorrect, but whether that determination was unreasonable – a substantially higher threshold. *Knowles v. Mirzayance*, 556 U.S. 111, 123-24 (2009); *Hibbler*, 693 F.3d at 1146, 1150.

A. Counsel Adequately Explained the Plea Agreement to Petitioner

Petitioner argues he was prejudiced by counsel's failure to adequately explain the terms of his guilty plea. Pet'r's Br. in Supp. at 6. Petitioner "believed that he was agreeing to a 16-18 month sentence" rather than 75-months, at least in part because he suffers from reading comprehension issues and Asperger's Syndrome. *Id.* at 6-7.

Respondent urges this Court to defer to the PCR court's strongly-worded finding that Petitioner is not credible, that trial counsel's affidavit is credible (Resp't Ex. 132), and trial counsel adequately assisted Petitioner in the course of accepting the plea offer. Resp't Resp. at 14.

The Supreme Court has extended *Strickland's* two-prong test to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In addition to

demonstrating that "counsel's representation fell below an objective standard of reasonableness" (*Strickland*, 466 U.S. at 688), a prisoner challenging a guilty plea must establish he was prejudiced by counsel's deficiencies by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo v. Moore*, 562 U.S. 115, 127-28 (2011); *Hill*, 474 U.S. at 58-59.

A guilty plea is valid where "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* (internal quotations omitted). Additionally, Petitioner must show that he was prejudiced by counsel's errors. *Id.* at 57-59; *Lambert v. Blodgett*, 393 F.3d 943, 979-80 (9th Cir. 2004).

During the entry of his plea, Petitioner asked the trial court for extra time to read "the last page" of the plea agreement, and the trial court encouraged him to do so, pointing specifically to the paragraph containing the following underlined words, "Pursuant to negotiations I hereby stipulate and agree to a departure sentence of 75 months prison." Resp't Ex. 103 at 3.

> THE COURT: Mr. Sundberg, stand up, sir. I have this document here entitled plea petition. It's got five pages. The last page, looks like it has your signature. Did you sign this, sir?
>
> PETITIONER: Yes, ma'am.
>
> THE COURT: And did you read it before you signed it?
>
> PETITIONER: Most of it, yes ma'am.
>
> THE COURT: Do you want to read more of it? I want you to make sure that you read it all.

PETITIONER: May I read the last page, please? And the second to the last page?

THE COURT: Yes, please. I want you to read it all and I want you to specifically look closely at paragraph 10.

PETITIONER: That's the one I wanted to look at, thank you. I'm sorry I'm taking this time.

THE COURT: Don't be.

PETITIONER: Thank you, Your Honor.

THE COURT: Have you read all that now, sir?

PETITIONER: Yes, ma'am.

THE COURT: Alright, and you signed this document?

PETITIONER: Yes, ma'am.

THE COURT: Did you sign it freely and voluntarily?

PETITIONER: Yes, ma'am.

THE COURT: And do you understand all of its terms and conditions?

PETITIONER: Yes, ma'am.

THE COURT: Is this how you want to proceed today?

PETITIONER: Yes, ma'am.

THE COURT: And we will, in a moment, file that plea petition. Even though everything is set out within this plea petition for your plea today and for these negotiations, I'm going to do this out loud with you to make sure that you're doing what you want to do, okay?

PETITIONER: Yes, ma'am.

THE COURT: Alright. You need to understand that any time you decide to plead guilty in a criminal case, you give up certain rights. You give up your right to remain silent. You give up your right to a jury trial, give up your right to call and cross examine witnesses at that trial. You give up your right to have the State prove this charge against you beyond a reasonable doubt. Do you understand those rights you'd be giving up if you decide to plead guilty here today?

PETITIONER:  Yes, Your Honor.

THE COURT:  I'm also required to tell you, if you're not a U.S. citizen, conviction here could result in deportation or refusal of naturalization.  If you are a U.S. citizen, that obviously doesn't apply to you.  Do you understand that?

PETITIONER:  Yes, ma'am.

THE COURT:  And has anyone threatened you in any way to get you to do this, sir?

PETITIONER:  No.

THE COURT:  Has anyone promised you anything besides what's in this plea petition to get you to do this?

PETITIONER:  No, ma'am.

Resp't Ex. 104 at 4-6.

Petitioner directly contradicted his above statements during his PCR court hearing, where he instead claimed he had not read the plea petition because he didn't want to take the court's time.  Resp't Ex. 140 at 42-43.  Petitioner testified that he was shocked during the sentencing portion of his plea hearing, when he heard the number 75-months: "And then all of a sudden, it dawns on me 'Oh, my God, I can't read this thing.  I'm reading-impaired.  It will take me ten minutes to read this stupid thing.  Nobody's going to wait around while I read this thing.'  So I just pretended to have read it, and just went on with it."  *Id.* at 43.

Trial counsel attested that when he was appointed as substitute counsel for Petitioner (after privately retained counsel withdrew for lack of payment), "the matter had already been through the settlement conference process once before, an offer had been tendered, and that offer had been rejected by [Petitioner]."  Resp't Ex. 132 at 1.  The plea agreement Petitioner ultimately signed, according to trial counsel, "was identical to the one that had been prepared for him [with

the assistance of original counsel] in late October of 2010...." *Id.* at 1-2. Trial counsel further

attested that Petitioner's alleged disabilities did not affect his knowing and voluntary entry of a

plea:

> As for the question of Asperger's affecting his ability to knowingly and voluntarily enter a guilty plea: If he did not understand what he was doing in pleading guilty pursuant to a settlement agreement that had been negotiated for him weeks before by his previous attorney, then we would not have *asked* me to approach the State and to ask if he might still accept that offer. He knew precisely what he was doing. When I saw him at the jail on November 12, 2010, we discussed the course of the case, and I told him that the ADA advised of additional damaging discovery that would be forthcoming, namely jail house phone recordings between Mr. Sundberg and family. He said to me: "OK, let's do it [meaning: try to settle the case]." He had apparently had some discussion with his family following my visit with them...and he had had some change of heart.

*Id.* at 5 (emphasis in original).

The PCR trial court found Petitioner's entry of a plea to be knowing and voluntary, and

that trial counsel's assistance in the process was effective:

> THE COURT: All right. Well, I have been listening to you, Mr. Sundberg, and I have been reviewing the documents that have come along as we've done that. For example, you, just a few minutes ago, were talking about how you were not given an adequate opportunity to review the plea petition, and that you somehow read "16 months to 18 months," and that lead you to believe that that [*sic*] was going to be the outcome.
>
> I would point out that literally immediately below that, the very next line, which is underlined, says, "Pursuant to negotiations, I hereby stipulate and agree to a departure sentence of 75 months prison," which, incidentally, does, in the paragraph above that, qualify you for 20 percent good time, which I'm sure you're aware of.
>
> So I find that the - - that you have not proven any error on the part of Mr. von Boeckmann. I find that his declaration is entirely credible. I - - the description of his interaction with you - - and I'm going to use this word advisedly [*sic*] - - the fantasy set forth in the suggested defense letter, that's Exhibit 13, demonstrates conclusively to me that you are a manipulative liar, sir. That is my firm and professional opinion. The same goes for your declarations, which are Exhibits 15, 21, and 22.

I think you are extremely lucky, sir, that counsel assisted you in negotiating a plea that resulted in a 75-month sentence that will be reduced, assuming you behave yourself, by 20 percent, because what you were facing, sir, was a 300-month outcome that, in my opinion, was highly likely.

I listened to that tape recording with Detective Williams, and he didn't trick you. He was skillful and giving [*sic*] you an opportunity to convict yourself, basically. You admitted on that tape that you touched your granddaughter's vagina. You said that, sir. And the risk is that if you'd gone to trial, jurors would have believed that you meant what you said, and you'd be sitting there now with a sentence that would, I presume, in looking at you, include the rest of your life.

So I find that the case was handled adequately; that Mr. von Boeckmann did a more than adequate job. I'm relying upon further remarks in the defendant's trial memorandum, and that he has failed - - the petitioner has failed his burden of proof.

\*\*\*

And, Mr. Sundberg, I believe you are a liar. I'm telling you that flat out because I don't believe really anything you said. Your whole description and manner of how all these people are out to get you, have conspired, and all this, that Mr. von Boeckmann set about to put you in prison when he was obligated, in my opinion, from what I can see, [*sic*] performed adequately to try to give you the best defense he could. And therefore, I'm signing judgment [*sic*] today dismissing this petition and granting judgment for the State.

Resp't Ex. 140 at 46-47.

Petitioner argues the PCR court was objectively unreasonable in determining the facts because it refused to consider "over 20 pages" of "new evidence" he sought to introduce during his hearing, which Petitioner argues "would have established that his guilty plea was not made knowingly and intelligently because of substitute counsel's deficient performance and Mr. Sundberg's mental deficiencies." Pet'r's Br. in Supp. at 2; Resp't Ex. 140 at 29. The record does not support such a conclusion.

At the outset of Petitioner's testimony, the PCR court told him not to read from handwritten documents he was holding:

All right. Now, before we get into that, let me just say this: At one point, I'm thinking it's in the letter that he just wrote yesterday, Mr. Sundberg was talking about reading some 20 pages of stuff. I read it somewhere. I think it's in that letter. And I don't - - I don't need that.

What I need is for Mr. Sundberg to address that's [*sic*] new. I have read these declarations. I have read his petition. I don't need a recitation or repetition of all of that stuff. So what I'm going to ask, to the extent you can assist me with that, Mr. Bostwick, is that we focus on anything that Mr. Sundberg hasn't addressed before. Just saying it over again doesn't make it so. I've read this other material, I've digested it, and I did understand your opening statement to, I think, very accurately address what Mr. Sundberg is alleging.

Resp't Ex. 140 at 29. The PCR court proceeded to give Petitioner ample opportunity to testify, and to present new evidence, if it existed. Petitioner testified at length about his belief that he suffers from severe Autism (*Id.* at 30-33), that he was "bullied" into confessing to crimes he did not commit, by a detective he thought was actually a mental health counselor (*Id.* at 31-33), that his attorney "tampered" with witnesses by speaking to Petitioner's family members (*Id.* at 35), that his attorney did not visit him in jail frequently enough (*Id.* at 34), and that he very much wanted to go to trial (*Id.*). At no point did he offer any actually new evidence.

In the present proceeding, Petitioner points to a document from 2003 entitled "Brief Neuropsychological L.D. Exam," arguing that it shows he is a slow reader and suffers from Asperger's Syndrome, *ergo* counsel should have spent "extra time" explaining the plea agreement to him. Resp't Ex. 111 at 5; ECF No. 32 at 7. Apparently prepared at Petitioner's request for the purpose of applying for extra time to complete the CBEST exam, this document does not establish that the PCR court was objectively unreasonable by finding Petitioner knew what he was agreeing to. Moreover, the PCR court record contains a 2012 psychological examination performed at the request of Petitioner's post-conviction counsel, in which a Ph.D. clinical psychologist specifically evaluated whether Petitioner's alleged disabilities impacted the entry of his plea. Resp't Ex. 129. After listening to his taped confession, reading the transcript

of his plea and sentencing hearing, and meeting with Petitioner, the psychologist wrote, "The claim that [Petitioner] was coerced by his attorney into accepting a plea agreement that he had not read does not appear to be supported by available data." *Id.* at 7.

In sum, Petitioner has failed to demonstrate trial counsel's representation fell below an objective standard of reasonableness, or a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. Accordingly, Petitioner has also failed to meet his burden of showing the PCR court's rejection of the claim that counsel failed to adequately assist him in the plea process was based upon an unreasonable determination of the facts, or that it was contrary to, or an unreasonable application of, clearly established law. *See* 28 U.S.C. § 2254(d)(1) &(2).

B. Counsel Adequately Investigated Potentially Exculpatory Evidence

Petitioner's second claim of ineffective assistance alleges trial counsel failed to investigate potentially exculpatory evidence, such as the possibility that Petitioner's taped confession to a police detective was "not as incriminating as the State has suggested." Pet'r's Br. in Supp. at 7. He points to a letter written to a settlement judge by original trial counsel, attempting to downplay the significance of Petitioner's confession. It reads:

> Statements made by Mr. Sundberg were not as incriminating as the State has suggested. Although Mr. Sundberg admitted touching his granddaughter, he never made a clear admission this was done with sexual intent. Additionally, statements made by Mr. Sundberg were made after several hours of police interrogation during which the investigating officer potentially made implied promises of leniency.

Resp't Ex. 119.

Respondent counters that trial counsel performed an adequate investigation, and that Petitioner cannot show a reasonable likelihood he would have insisted upon going to trial "but

for" counsel's alleged deficiencies, much less that a jury would have acquitted him of the charges in the indictment." Resp't Resp. at 15-16.

When the alleged error is a failure to investigate, the resolution of the prejudice inquiry "will depend on the likelihood that discovery of the evidence would have lead counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial." *Id.* This prediction is made objectively, "without regard for the 'idiosyncrasies of the particular decision maker." *Id.* at 60 (quoting *Strickland*, 466 U.S. at 695).

Petitioner offers no evidence demonstrating that the PCR court's finding that his taped confession was not coerced, and that after hearing it a jury would likely have found him guilty of the crimes charged in the indictment was an unreasonable determination of the facts. Resp't Ex. 140 at 46-47. As noted above, the PCR court record also relied upon trial counsel's affidavit, wherein he explained that he personally visited Petitioner's house to view the surroundings in which the alleged crime took place, and to "gauge the witness stand-worthiness" of the people Petitioner suggested for his defense. He wrote:

> We went at it and didn't pull the plug on investigation and trial prep until *Mr. Sundberg specifically asked me* to approach the ADA and to ask if Mr. Sundberg could still be given the opportunity to settle the case per the resolution that had been worked out when [original trial counsel] was his lawyer, and further, if he could do so by way of an *Alford* plea.

Resp't Ex. 132 at 3 (emphasis in original). Trial counsel also attested to strategic consideration about how to mitigate Petitioner's taped confession:

> These statements, made to Detective Williams, were damaging and were in the State's view plain admissions. Were they? Obviously, at trial we would have argued that they were not. We would have argued, probably, that they were the statements of a man who felt guilty for having touched his granddaughter's vagina, but whose feelings of guilt and remorse and self-loathing were natural

under the circumstances and did not amount to a confession. Personally, I might not have played up the idea that Mr. Sundberg, a man with a learning disability, had been duped by Detective Williams, but then again by the point in the case at which Mr. Sundberg chose to plead guilty I hadn't settled upon a definite strategy for trial.

Resp't Ex. 142 at 4.

Again, Petitioner fails to demonstrate trial counsel's assistance fell below an objective standard of reasonableness, or that there is a reasonable probability he would not have pleaded guilty and would have insisted on going to trial had trial counsel conducted further investigation. *Hill*, 474 U.S. at 58-59; *Weaver v. Palmateer*, 455 F.3d 958, 971 (9th Cir. 2008) (finding no basis upon which a reviewing court could conclude the petitioner was prejudiced where he did not even suggest what the results of further investigation may have revealed). Additional investigation would not have changed Petitioner's taped confession, which the PCR court concluded was very damaging to Petitioner's chances at trial. Resp't Ex. 140 at 46-47; *see Lambert v. Blodgett,* 393 F. 3d 943, 984 (9th Cir. 2004) (prejudice analysis for ineffective assistance claim based upon failure to investigate includes consideration of weight of evidence).

In sum, Petitioner fails to meet his burden of showing the PCR court was objectively unreasonable in finding trial counsel to be credible, or that it unreasonably applied *Strickland* in concluding trial counsel adequately investigated potentially exculpatory evidence. *See* 28 U.S.C. § 2254(d)(1)&(2).

///

///

///

## CONCLUSION

Based on the foregoing, Petitioner's Habeas Corpus Petition (ECF No. 1) is DENIED, and this proceeding is DISMISSED, with prejudice. The Court declines to issue a Certificate of Appealability because Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 1 day of May, 2017.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge